IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CONNOR MASON, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | Civil No. 1:16-cv-01299-RP |
| REGIONS BANK and RONALD THOMAS ASHBY d/b/a STATEWIDE RECOVERY SOLUTIONS, | § § § § § § | |
| Defendants. | § | |

### REGIONS BANK'S REPLY IN SUPPORT OF
### MOTION TO COMPEL ARBITRATION

Connor Mason's response to Regions Bank's Motion to Compel Arbitration asks the Court to ignore basic construction principles and the Contract's plain language to prevent Regions from invoking the Contract's arbitration provision. The provision is clear, fair, and binding on Mason. For these reasons—and considering the strong federal policy favoring arbitration—arbitration is appropriate in this case.

**A.     Mason Is Bound by the Arbitration Clause in the Contract[1]**

    **1.     Mason's tortured reading of the contract has no merit.**

Mason's far-reaching interpretation of the Contract has no basis under Texas law,[2] and is completely unsupported by authority. The Texas Supreme Court has held that "[t]he language in an agreement is to be given its plain grammatical meaning unless to do so would defeat the parties'

---

[1] In his first argument, Mason contends that Regions' copy of the Contract (attached as Exhibit A to its Motion to Compel Arbitration) is inadmissible because it is unauthenticated hearsay. Attached to this reply and incorporated herein is Ex. A-1, which is the affidavit of Regions' custodian of records authenticating the Contract. And despite Mason's contention otherwise, the Contract does not constitute hearsay because it contains statements that establish an interest in property. *See* Federal Rule of Evidence 803(15).

[2] Under the Contract's terms, federal and Texas law apply. Ex. A, p. 2, ¶ 8.

intent."[3] Contracts must be interpreted in a manner that harmonizes and gives effect to each provision, and no single provision will be given controlling effect.[4] It is well-settled that more specific provisions govern general contract provisions.[5]

Clay Cooley Nissan of Austin South ("Clay Cooley") assigned its interest in the Contract to Regions,[6] and the Contract explicitly includes assignees in the arbitration clause:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), *between you and us or our employees, agents, successors or assigns*, which arises out of or relates to your credit application, purchase, or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.[7]

Mason ignores that language, relying instead on the Contract's definition of "Seller" as "Clay Cooley Nissan of Austin South." With his blinders firmly in place, Mason argues that the arbitration clause's declaration that "Either you or we may choose to have any dispute between us decided by arbitration [ ]" actually excludes assignees like Regions from enforcing the arbitration clause.[8] This argument fails for two reasons.

---

[3] *DeWitt Cty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999).

[4] *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 292 (Tex. 2004) ("We construe contracts as a whole in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.").

[5] *See e.g. Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) ("Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense."); *Centerpoint Apartments v. Webb*, No. 2-07-278-CV, 2008 WL 4052929, at *5 (Tex. App.—Fort Worth, Aug. 28, 2008, no pet.) (holding more specific contractual provision governed the parties' general agreement); *Ayres Welding Co. v. Conoco, Inc*, 243 S.W.3d 177, 181 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("Additionally, contract terms are to be given their plain, ordinary, and generally accepted meanings and the more specific provisions of a contract will control over the general.").

[6] *See* Ex. A, p. 1.

[7] *Id.* at p. 2 (emphasis added).

[8] *See generally* Ex. A.

---

First, the arbitration clause itself declares that disputes "between you [Mason] and us [Clay Cooley] *or* our employees, agents, successors *or assigns* [Regions]" are subject to arbitration.[9] This specific clause trumps the Contract's general definitions Mason relies on. Interpreting the Contract as excluding assignees from enforcing arbitration would reduce this clause to superfluous language, which is inconsistent with the general principles of contract construction. Further, Mason's argument that an assignee could only be compelled to arbitration if the seller and assignee were sued together and the seller compelled arbitration is nonsensical—the arbitration clause does not limit itself to disputes between the buyer and seller *and* assigns. The provision states that any claim or dispute between the buyer *and* seller *or* assigns may be resolved by arbitration.

Second, when Clay Cooley assigned its interest in the Contract to Regions, it assigned its interest without recourse and in its entirety.[10] Immediately after stating the "Seller" is referred to as "we" or "us," the Contract acknowledges that it "may be transferred by the Seller."[11] Assignees of a contract with an arbitration provision are subject to it.[12] In a per curiam opinion, the Fifth Circuit held that when considering the strong presumption in favor of arbitration and the "summary nature of a motion to compel arbitration," an affidavit stating that appellants were assigned the resisting party's account was sufficient evidence of assignment.[13] This case is even simpler: the Contract is uncontroverted evidence that Clay Cooley assigned its interest to Regions.

---

[9] *Id.* at 2.

[10] *Id.* at 1.

[11] *Id.*

[12] *In re Prudential Sec., Inc.*, 159 S.W.3d 279, 284 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding) ("Here, however, by alleging claims as Ned's assignee, Lynda seeks to enforce the contract and is subject to the arbitration clause. Although Lynda's original claims are grounded in legal theories distinct from the claims she brings as assignee under the contract Ned signed, they are factually intertwined and subject to the arbitration provision of the contract.").

[13] *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012) ("Given this strong presumption favoring arbitration, the summary nature of a motion to compel arbitration, and our precedent in *Doddy,* the Miller Declaration is sufficient evidence-in this motion-to-compel setting-to establish the assignment of BYA's rights to Securities America by a preponderance of the evidence.").

### 2. Mason is equitably estopped from refusing to arbitrate.

Even if Regions did not have the right to enforce the arbitration clause as an assignee, Mason's claims rely on the Contract and thus prohibit him from resisting arbitration. The doctrine of direct-benefits estoppel allows a non-signatory to compel a signatory's actions to arbitration "if liability arises solely from the contract or must be determined by reference to it."[14] Parties are not allowed to "have it both ways" by holding non-signatories liable pursuant to an agreement containing an arbitration clause, but simultaneously denying the arbitration clause's applicability based on the opposing party's non-signatory status.[15] Mason directly references the Contract in his complaint and alleges that defendants "breached the terms of the retail installment sales contract" by repossessing the vehicle and failing to send the proper notices.[16] Mason's claims are indisputably subject to arbitration.

### B. The Arbitrator Selection Clause Is Not Unconscionable

The "critical inquiry" in determining unconscionability of an arbitration provision is whether the arbitral forum is an adequate substitute to litigation and allows the litigant to "effectively vindicate his or her rights."[17] A party opposing arbitration may not show unconscionability by mere speculation; there must be specific proof of the forum's inadequacy.[18] The Texas Supreme Court has also cautioned that courts "should be wary of setting the bar for holding arbitration clauses unconscionable too low" and undermining the strong federal policy favoring arbitration.[19]

---

[14] *Craddick Partners, Ltd. v. EnerSciences Holdings, LLC*, No. 11-15-00014-CV, 2016 WL 3920024, at *2 (Tex. App.—Eastland July 14, 2016, no pet.) (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005)).

[15] *Id.* ("In short, a party cannot '"have it both ways"': it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'") (citing *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000)).

[16] Complaint, ¶ 27 (ECF No. 1).

[17] *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 231–32 (Tex. 2014) (citing *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 894 (Tex .2010)).

[18] *Id.* at 232.

[19] *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 893 (Tex. 2010).

Mason has failed to show the Contract's arbitrator selection clause is unconscionable—he merely references his own counsel's personal opinion and cases from jurisdictions that have no bearing on the present case. Mason's counsel also misstates Regions' position in his affidavit; Regions never stated that it would only accept the American Arbitration Association ("AAA") as the arbitral forum. In Exhibit 2 to opposing counsel's affidavit, Regions responded that it did not accept Mason's proposed terms, including using JAMS as the arbitral forum,[20] but never stated that it would exclusively use the AAA.

As the Court is aware, the AAA is a widely respected non-profit organization, operating since 1926, and is a more than adequate substitute for litigation.[21] Its arbitrators are former judges and attorneys,[22] and its Consumer Rules provide that the parties may disclose the appointed arbitrator's potential bias, financial or personal interest, or past or present relationship with the parties at any time during the arbitration to preserve impartiality.[23] The Consumer Rules also provide that if a party asks, the arbitrator may instruct specific documents and other information to be shared between the witnesses.[24] Although Mason complains about the lack of "basic discovery rights,"[25] he was warned of this when he executed the Contract: "DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER

---

[20] Declaration of Alexander B. Trueblood in Opposition to Motion to Compel Arbitration, Ex. 2 (ECF No. 20-1) ("My client does not accept these terms, so we will have to see what the court decides after Regions moves to compel arbitration.").

[21] *See Consumer Rules*, p. 7, ADR.ORG, https://www.adr.org/sites/default/files/Consumer%20Rules.pdf (last visited July 12, 2017).

[22] *What We Do*, ADR.ORG, https://www.adr.org/Arbitration (last visited July 12, 2017).

[23] Consumer Rules, *supra* note 21, at 18-19.

[24] *Id.* at 20.

[25] Opposition to Motion to Compel Arbitration, p. 6 (ECF No. 20).

RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION."[26]

## CONCLUSION

Regions attempted to negotiate with Mason to reach mutually agreeable arbitration terms, including the arbitral venue, but was unsuccessful. For all the reasons stated above and within its Motion to Compel Arbitration, Regions respectfully asks this Court to honor the parties' agreement and grant its motion and stay the pending litigation against Regions.

Respectfully submitted,

**JOHNSTON PRATT PLLC**

By: */s/ Amelia Coates*
    **Kenneth C. Johnston**
    Texas Bar No. 00792608
    kjohnston@johnstonpratt.com
    **Amelia Coates**
    Texas Bar No. 24097512
    acoates@johnstonpratt.com

1717 Main Street, Suite 3000
Dallas, Texas 75201
(214) 974-8000 (telephone)
(972) 474-1750 (telecopier)

**Attorneys for Defendant,
Regions Bank**

### Certificate of Service

I certify that my office served a true and correct copy of the foregoing document on all parties or counsel of record via electronic service on July 12, 2017.

    */s/ Amelia Coates*
    Amelia Coates

---

[26] Ex. A, p. 2 (emphasis in original).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| CONNOR MASON,<br>    Plaintiff, | § § § § | |
| v. | § § | Civil No. 1:16-cv-01299-RP |
| REGIONS BANK and<br>RONALD THOMAS ASHBY d/b/a<br>STATEWIDE RECOVERY SOLUTIONS,<br><br>    Defendants. | § § § § § § | |

### AFFIDAVIT IN SUPPORT OF REGIONS BANK'S
### MOTION TO COMPEL ARBITRATION

STATE OF ALABAMA     §
COUNTY OF JEFFERSON   §

    BEFORE ME, the undersigned notary public, on this day personally appeared Kimberly Burkhalter Townsley, who, after being duly sworn by me, declared upon her oath as follows:

    1.      My name is Kimberly Burkhalter Townsley. I am over the age of eighteen years and am fully qualified and competent to make this affidavit. I am the custodian of records for Regions Bank, which has authorized me to make this affidavit. I have never been convicted of any felony or misdemeanor involving moral turpitude. The following statements are based upon my personal knowledge and/or upon my review of certain business records and associated records and the information they contain. All facts stated herein are true and correct.

    2.      I certify that Exhibit "A" attached to Regions Bank's Motion to Compel Arbitration (the "Motion"), and incorporated herein by reference, is a true and correct copy of the Motor Vehicle Retail Installment Sales Contract (the "Contract") in the name of Connor Steven Mason dated on or about August 20, 2015. This document is kept by Regions Bank in the regular course of business, and it was in the regular course of business for an employee or representative of Regions Bank with

knowledge of the act, event, condition, opinion, or diagnosis recorded, to make the record or transmit information to be included in such record, and the record was made at or near the time or reasonably soon thereafter. The Contract attached to the Motion is the original or exact duplicate of the original.

_____
Kimberly Burkhalter Townsley
Custodian of Records

**SUBSCRIBED AND SWORN TO BEFORE ME** by the said Kimberly Burkhalter Townsley on this the 12th day of July, 2017, to certify which witness by and official seal.

_____
Notary Public in and for the State of Alabama

**MY COMMISSION EXPIRES OCTOBER 28, 2020**
_____
My Commission Expires

Julie B. Boyd
_____
Printed Name